EMMA VLIET v. WILLIAM M. SIMANTON AND ISAAC WOOLVERTON.

Argued March 1, 1899—Decided June 12, 1899.

This action was brought upon a promissory note of which the following is a copy, viz. :

"$1,000. ASBURY, NEW JERSEY.

"One day after date we, the trustees of Musconetcong Grange, No. 114, known as W. Fleming and Company, promise to pay Emma Vliet or bearer the sum of one thousand dollars for value received, with interest at 5½ per cent. from date.

"Dated April 1, 1895.

"Trustees, { WM. M. SIMANTON,
{ ISAAC WOOLVERTON."

On a former trial it was ruled that this note conclusively imported personal and not corporate liability. The Court of Errors and Appeals, upon the assumption of the existence of a corporation named "The Trustees of Musconetcong Grange, No. 114," held that on its face the note was ambiguous and that parol proof to show the real character of the liability was permissible. On the trial under review it was proved that Musconetcong Grange, No. 114, of the Order of Patrons of Husbandry, was, prior to the year 1894, an unincorporated association, having, among others, officers called trustees, and carrying on business under the name of W. Fleming & Co.; that such trustees were accustomed to issue notes like that in suit; that in the year 1894 the association became incorporated under the name of "Musconetcong Grange, No. 114;" that the plaintiff, without knowledge of its incorporation, loaned to the grange, on the credit of the trustees who signed her note, the sum of money named therein ; that the parties did not

meet, but note and money were exchanged through an intermediary acting for the grange. The court charged the jury that to hold the defendants liable on the note there must be evidence of their intention to make it a personal obligation. The verdict was in favor of the plaintiff. On rule to show cause why a new trial should not be granted—*Held*—

1. That, although under the new proof as to the true name of the corporation for which the defendants were trustees, the note signed by them imported *prima facie*, if not conclusively, their personal liability, yet that the ruling of the Court of Errors and Appeals that on its face the note was ambiguous, must be taken as the law of the case as far as the trial under review is concerned.

2. That considering the note as ambiguous, the verdict was sustained by the evidence.

On rule to show cause why new trial should not be granted.

Before MAGIE, CHIEF JUSTICE, and Justices GARRISON, LIPPINCOTT and COLLINS.

For the plaintiff, *Martin Wyckoff.*

For the defendants in favor of the rule, *William A. Stryker.*

The opinion of the court was delivered by

COLLINS, J. The plaintiff prevailed in a suit on a promissory note of which the following is a copy, viz. :

"$1,000. ASBURY, NEW JERSEY.

"One day after date we, the trustees of Musconetcong Grange, No. 114, known as W. Fleming and Company, promise to pay Emma Vliet or bearer the sum of one thousand dollars for value received, with interest at $5\frac{1}{2}$ per cent. from date.

"Dated April 1, 1895.

"Trustees, { WM. M. SIMANTON,
{ ISAAC WOOLVERTON."

The case comes before us on rule to show cause why the verdict should not be set aside and a new trial granted.

On a former trial it was ruled that the note in suit con-

clusively imported personal and not corporate liability. On review, the Court of Errors and Appeals held that on its face the note was ambiguous and that parol proof to show the real character of the liability was permissible. *Simanton v. Vliet, 32 Vroom 595.*

On the new trial it was proved that for a considerable time before the incorporation hereinafter mentioned, there had existed in the county of Warren an association claiming to be a subordinate grange of the order styled Patrons of Husbandry. It was called Musconetcong Grange and was numbered 114. It carried on a general store and milling business, which, in order to avoid an antipathy existing in commercial circles against the Patrons of Husbandry, was conducted in the name of W. Fleming & Co., Mr. Wesley Fleming being the superintendent and manager of the business, and, then or later, treasurer of the grange. Both of the defendants became members of this association at least as early as 1893. On February 3d, 1894, there was duly acknowledged by the proper officers of the grange a certificate under the act of April 21st, 1876, authorizing the incorporation of such granges. *Gen. Stat., p.* 1614. It was recorded in the office of the clerk of Warren county, on February 20th, 1894, and filed in the office of the secretary of state on February 27th, 1894. It was proved in evidence and reads as follows:

"*To the Clerk of the County of Warren, in the State of New Jersey:*

"We, the subscribers, do hereby certify that Musconetcong Grange, No. 114, of the order of Patrons of Husbandry, in the State of New Jersey, was duly instituted and chartered a subordinate Grange according to the constitution of the National Grange of the order of Patrons of Husbandry by the name of Musconetcong Grange, No. 114; that said grange carry on business under the name of W. Fleming & Co., and that said Grange is desirous of having the benefit of an act of the Legislature of New Jersey, entitled 'An act to enable Granges of the order of Patrons of Husbandry to incorporate,'

approved April 21st, 1876; that the members of said Mus-
conetcong Grange, on the eleventh day of January, A. D.
eighteen hundred and ninety-four, at a regular meeting thereof,
held at Asbury, in the County of Warren, in the State of
New Jersey, in accordance with the constitution of the
National Grange, aforesaid, and in conformity to its own
constitution and by-laws, and in pursuance of notice given
and entered on the minutes of said Grange of such intended
action at a previous regular meeting thereof, did at the time
and place aforesaid regularly elect William M. Simanton,
Isaac Woolverton and Absalom Apgar, trustees for the pur-
pose of incorporating Musconetcong Grange under the pro-
visions of said act. And that at the time of said election
we, the subscribers, were the master, overseer and secretary
of said Grange, as we have hereto respectively subscribed
ourselves.

> "ROBERT MELROY, [L. S.]
>     "*Master.*
> "JOHN R. DALRYMPLE, [L. S.]
>     "*Overseer.*
> "LIZZIE WILLIAMSON, [L. S.]
>     "*Secretary.*"

The statute cited, after providing for the recording and
filing of such a certificate upon the action certified, enacts:
"2. That said trustees and their associates and successors in
office shall be constituted and declared a body corporate and
politic in fact and in law and shall be known by their name
and number of said grange."

The certificate of incorporation was not put in evidence on
the former trial, and the decision of the Court of Errors and
Appeals was reached upon the assumption of the existence
of a corporation named "The Trustees of Musconetcong
Grange, No. 114." Reading the statute and certificate to-
gether, it now seems clear that the corporation of which the
defendants were trustees when they gave the note in suit must
have been named "Musconetcong Grange, No. 114." It is

evident from the proof at the trial now under review that its officers and members understood that to be its name. The defendants themselves, on June 18th, 1896, signed a certificate of a change of the name under which the corporation should carry on business, from "W. Fleming & Co." to "Asbury Mercantile Association," and in that document the corporate name is expressly stated to be "Musconetcong Grange, No. 114." Such being the name of the corporation for which the defendants were trustees, the note in suit imports their personal liability. In the case of *Dayton* v. *Warne*, 14 *Vroom* 659, the Court of Errors and Appeals unanimously held to impose a personal liability on the obligors, a bond that ran as follows: "Know all men by these presents that we, Timothy Wood, John H. Dayton [and others named], trustees of the Methodist Episcopal Church of Jacksonville, their successors and assigns, * * * are held and firmly bound unto Abraham Warne, * * * in the sum of sixteen hundred dollars, * * * to be paid, etc. * * * For which payment well and truly to be made, we bind ourselves, our and each of our heirs, executors, administrators, jointly and severally firmly by these presents. Sealed, etc. * * * The condition * * * is that if the above-bounden Timothy Wood, John H. Dayton [and others named], trustees as aforesaid, their successors and assigns, or any of them, shall * * * pay * * * Abraham Warne, * * * Eight Hundred Dollars, * * * then this obligation to be void, else to be and remain in full force and virtue." In this instrument there was an evident attempt to create a corporate liability, but this did not avail to prevent the arising of a personal liability which was held to be conclusively inherent in the obligation. The principle of the decision extends to all written promises, and is not limited to sealed instruments. The case differs from that before us, because in the bond there were terms that necessarily involved personal liability; but there are many decisions in other jurisdictions, both in this country and in England, where notes indistinguishable from that in suit have been held conclu-

sively personal promises. A typical case is *Powers* v. *Briggs*,
79 *Ill.* 493, where the note ran thus: "We, the trustees of
the Seventh Presbyterian Church, promise to pay," &c., and
was signed "Trustees." In *Dutton* v. *Marsh, L. R.*, 6 *Q. B.*
361, the note ran: "We, the directors of the Isle of Man
Slate Co., Limited, do promise to pay," &c., and was held to
conclusively import personal liability, although the corporate
seal was affixed. Many decisions on the general subject are
collated in the note to *Burlingame* v. *Brewster*, 22 *Am. Rep.*
177. Further citation seems needless, for if the corporation
for which the defendants were trustees at the time they signed
the note in suit bore the name of "Musconetcong Grange,
No. 114," then their signature imported, at least *prima facie*,
a personal liability. *Kean* v. *Davis*, 1 *Zab.* 683; *Reeve* v.
*First National Bank of Glassboro*, 25 *Vroom* 208. No ade-
quate proof to overcome that presumption was adduced, and
therefore the verdict was right.

The court recognizes, however, as the law of this case, that
under the decision of the Court of Errors and Appeals re-
versing the judgment reached on the former trial, the new
trial, in theory, must have proceeded on the hypothesis of
ambiguity in the note, with the burden of solution on the
plaintiff; and the evidence in the cause has been considered
from that point of view, but with no different result.

The plaintiff undoubtedly thought she was loaning her
money to Musconetcong Grange on the credit of the indi-
viduals who were its trustees. It is objected that statements
by and to the plaintiff upon this subject, made in the absence
of the defendants, were admitted in evidence. They were
competent, not to bind the defendants but to show the plaint-
iff's purpose in the loan. Jacob Vliet, her brother, with
whom she transacted the business, was in no sense her agent.
He was an officer of the grange and told his sister that she
would have the individual liability of the trustees. The
defendants themselves did not see Mr. or Mrs. Vliet, but
signed the note and left it with Wesley Fleming, who gave it
to Jacob Vliet on receiving the money sent by the plaintiff.

The grange always had trustees. By-laws adopted in 1889 provided for such officers; the special election certified was merely for the purpose of incorporation. The reported proof is somewhat meager on the point, but it appears from the judge's charge to the jury that notes like that in suit were issued before the incorporation. Of course on such notes the signers were liable. The unincorporated grange was known as "W. Fleming & Co." The plaintiff did not know of its incorporation. The court properly charged the jury that the recording and filing of the certificate of incorporation was not notice to her. There is no doubt that the plaintiff took the note as binding those who signed it. The court did not rest the case upon the plaintiff's understanding, but charged the jury that to hold the defendants liable for the payment of the note there must be evidence that it was their intention to make it a personal or individual obligation. The charge as a whole was favorable to the defendants and fairly submitted to the jury the question of the character of the liability created by the note.

We cannot say that the verdict was against the clear weight of the evidence, and are unwilling to disturb it. Some evidence admitted under objection seems immaterial, but for that very reason was harmless. It could not have influenced the verdict.

It must not be inferred that a grange incorporated under the act of 1876 is authorized to carry on a manufacturing or mercantile business. If not so authorized, then the borrowing of money for such a business would be *ultra vires;* and in such case those persons who assume to act for the grange would be personally liable for any engagement effected by them and not enforceable against it. *Booth* ads. *Wonderly*, 7 *Vroom* 250.

As such a result would accord with that reached in this case, it is not necessary to examine or decide the question suggested.

The rule to show cause will be discharged.